UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK, CHARLESTON, SC

2005 DEC -5  P 4: 09

Melvin Bowens, # 311283,                          )   C/A No. 2:05-2874-DCN-RSC
                                                  )
                          Plaintiff,              )
                                                  )
vs.                                               )
                                                  )   Report and Recommendation
Warden  Bernard  McKie  of  Kirkland  Correctional )
Institution;                                      )
SCDC Director Jon Ozmint; and                     )
S.C. Attorney General Henry McMaster,             )
                                                  )
                          Defendants.             )
                                                  )

This is a civil rights action filed by a former state prison inmate *pro se*.[1]  At the time

he filed this case in early October 2005, Plaintiff was housed at the Kirkland R & E Center

in Columbia, South Carolina, part of the South Carolina Department of Corrections (SCDC)

prison system.   In the operative Amended Complaint (Entry 4) that Plaintiff filed in

compliance with the initial Order in this case (Entry 3), Plaintiff states that he was housed

at Kirkland R& E for less than one month, from September 15, 2005-October 11, 2005,

when, allegedly, he was transferred to another SCDC facility to serve the remainder of his

four-month sentence for probation violation.   It appears that Plaintiff did not remain in

SCDC custody for the full four months, however, because on November 16, 2005, the

Clerk of Court received a change of address notification from Plaintiff indicating that he

---

[1] Pursuant to 28 U.S.C. §636(b)(1), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized
to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District
Court.  *See also* 28 U.S.C. § § 1915(e); 1915A (as soon as possible after docketing, district courts should
review prisoner cases to determine whether they are subject to summary dismissal).

was being released on November 18, 2005. (Entry 6).

In his Amended Complaint, Plaintiff seeks compensatory damages and injunctive relief from three Defendants: the Warden of Kirkland R & E, the Director of SCDC, and the South Carolina Attorney General, for allegedly unconstitutional conditions of confinement that Plaintiff claims he suffered during his relatively brief  confinement at Kirkland. He claims that his constitutional rights were violated when: he was allegedly forced by unnamed personnel to donate his street clothes to charity and to pay for DNA testing charges, he was made to stay in a 23-hour lockdown status during his time at Kirkland, he was forced by unnamed personnel to shave with a razor and was deprived of meals and library privileges when he refused to shave, he was required to participate in standing counts and his mattress was taken when he refused to comply, his requests to see medical personnel took too long, and the inmate grievance process was "backlogged" and did not work efficiently.  Despite Plaintiff's numerous claims, other than stating that Defendant Warden McKie told him that the grievance system was backlogged, Amended Complaint, at "4c," that he could go the library , id., at "4b", and that he should file a request to see medical, id., at "4a", Plaintiff does not state anywhere in his Complaint that any of the three named Defendants were in any way personally involved in the situations which he claims violated his constitutional rights while he was at Kirkland.  Plaintiff also does not specifically allege that any Defendant is responsible for any of the policies that he claims subjected him to unconstitutional conditions of confinement or that any of the Defendants had specific knowledge that others were requiring Plaintiff to do the things that he claims violated his rights.  In fact, other than the brief references to communications that Plaintiff allegedly had with Defendant McKie about the grievance system, library access, and

2

medical attention, there are no factual references to any of the three Defendants anywhere in Plaintiff's Amended Complaint.

## Pro Se Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Amended Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. § § 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951 (4th Cir. 1995)(*en banc*); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); and Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *see* Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See* Hughes v. Rowe, 449 U.S. 5, 9-10 & n.7 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *See* Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *See* Weller v. Department of Social Servs., 901 F.2d 387(4th Cir. 1990). Even under this less stringent standard, however, the Complaint filed in this case is subject to summary dismissal under

3

the provisions of 28 U.S.C. § 1915(e)(2)(B).

## Discussion

Initially, the Amended Complaint filed in this case is subject to summary dismissal without service on any of the three Defendants because Plaintiff fails to allege their personal involvement in any of the situations and/or policies which he claims violated his federal constitutional rights while he was housed at Kirkland R & E. Under the provisions of the Prison Litigation Reform Act, more specifically 28 U.S.C. § 1915(e)(2)(B), this Court should dismiss an action filed by a prisoner which is "frivolous" or "fails to state a claim on which relief may be granted." Liability under 42 U. S. C. § 1983[2] arises only when a plaintiff can show that a defendant was "'personally responsible for a deprivation of a constitutional right.'" Zentmyer v. Kendall County, Ill., 220 F.3d 805, 811 (7th Cir. 2000) (quoting Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996)).

Although there is a limited exception to the prohibition against imposing liability on supervisory personnel in § 1983 cases under the doctrines of respondeat superior or vicarious liability[3] which has been enunciated in cases such as Slakan v. Porter, 737 F.2d 368, 370-75 (4th Cir. 1984), that exception does not operate to save Plaintiff's Amended Complaint from dismissal for frivolity in this case. The Slaken exception is not adequately

---

[2] Plaintiff's claims of constitutional violations are before the Court pursuant to 42 U.S.C. § 1983. Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of section 1983 is to deter state actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. See McKnight v. Rees, 88 F.3d 417(6th Cir. 1996)(emphasis added).

[3] Although Plaintiff does not state what, if any, professional relationship any of the Defendants may or may not have with any unnamed individual who might have personally violated the United States Constitution in their dealings with Plaintiff, it can be judicially noticed that both Defendants McKie and Ozmint could be considered "supervisors" with respect to SCDC employees and/or officers employed at Kirkland R & E. The same cannot be said of Defendant McMaster.

4

pled in this case, even under a very liberal construction of Plaintiff's allegations, because, as previously noted, there are no allegations at all against two of the Defendants and the few allegations referencing Defendant McKie are clearly not sufficient to state a viable supervisory liability claim against him. As stated above, Plaintiff has not named any SCDC employee or official who allegedly personally violated Plaintiff's constitutional rights, much less that any of the Defendants were aware of the allegedly unconstitutional activities of the unnamed individual employee(s) or official(s). Thus, Plaintiff has not alleged any "pervasive and unreasonable risk of harm from *some specified source . . . "* nor has he alleged that McKie's "corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices],' " 737 F.2d at 373 (emphasis added), as required to state a viable claim of supervisory liability in § 1983 cases. *See* Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994). Since there are no allegations of any individual wrongdoing or potential supervisory liability for anyone else's wrongdoing on the part of any of the named Defendants, Plaintiff's Amended Complaint is both frivolous and fails to state a claim on which relief can be granted. *See* Cochran v. Morris, 73 F.2d 1310 (4th Cir. 1996)(statute allowing dismissal of *in forma pauperis* claims encompasses complaints that are either legally or factually baseless); Weller v. Dep't of Social Servs., 901 F.2d 387, 389 (4th Cir. 1990)(dismissal proper where there were no allegations against defendants).

Furthermore, even if Plaintiff had named Defendants upon whom § 1983 liability could be based, Plaintiff's allegations fail to show any  compensable constitutional violations arising from the conditions of his confinement at Kirkland R & E. Although both state and federal prisoners retain many constitutional rights, it has been recognized that

5

incarceration inherently limits certain constitutional rights of prisoners.    See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The United States Supreme Court has held that prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement: they must ensure adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). In order to state a viable conditions-of-confinement claim an inmate must show that: (1) the conditions were objectively serious enough to pose a substantial risk of serious harm; and (2) that the prison official's state of mind was one of "deliberate indifference." Farmer, 511 U.S. at 834. These elements have also been described as the "objective component" and the "subjective component." Wilson v. Seiter, 501 U.S. 294 (1991). The objective component examines the gravity of the alleged deprivation. See Hudson v. McMillian, 503 U.S. 1 (1992). The subjective component is the state of mind of the prison official(s) alleged to have violated a plaintiff's rights.

Decisions of the United States Court of Appeals for the Fourth Circuit provide more detailed guidelines for the analysis of the Plaintiff's claims. The objective conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. See Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). In Strickler v. Waters, 989 F.2d 1375 (4th Cir.1993). the Court said that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant harm. While these conditions standing alone may not constitute cruel and unusual punishment, they may constitute an Eighth Amendment violation if considered in aggregate, see McElveen v. County of Prince

6

William, 725 F.2d 954 (4th Cir.1984). The United States Supreme Court has cautioned, however, that to be considered in aggregate, conditions must have mutually enforcing effects that produce deprivation of a single, identifiable need such as food, warmth, or exercise. *See* Wilson v. Seiter.

The Prison Litigation Reform Act (PLRA) of 1996 placed an important limitation upon all actions arising from prison conditions. Under 42 U.S.C. § 1997e(e) no recovery of monetary damages is allowed for emotional stress:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Plaintiff's allegations about his conditions of confinement while he was at Kirkland R & E are too general to state any Eighth Amendment claim upon which this Court could grant relief. As the United States Court of Appeals for the First Circuit has observed: "Complaints based on civil rights statutes must do more than state simple conclusions; they must at least outline the facts constituting the alleged violation." Pavilonis v. King, 626 F. 2d 1075, 1078 (1st Cir. 1980). By way of factual allegations, the Plaintiff specifically refers to only a few matters: that he was forced to stay in his cell alone for twenty-three (23) hours a day, that he was forced to shave with a razor and deprived of two days of meals and library privileges when he refused, that he was deprived of adequate sleep because he had to participate in standing counts and that his mattress was taken when he refused to comply, that his requests to see medical personnel took too long, and that the inmate grievance process was "backlogged" and did not work efficiently.

None of Plaintiff's allegations show that he was subjected to any type of serious or substantial harm from any of the conditions that he contends violated his constitutional

7

rights.  For example, with respect to the allegations about the "lockdown" practice, Plaintiff states only that "[t]he lockdowns negatively affected [his] mental health & psychological well being from time to time."  Amended Complaint, at 4.  He does not provide any supporting facts showing the nature and extent of the alleged negative effects and such conclusory allegations are insufficient to show the requisite injury for any viable Eighth Amendment claim.  The same is true with respect to his allegations about the shaving and standing count requirements.  Plaintiff states only that the required shaving was "beginning to affect [his]  health and facial appearance."  He does not say how or to what extent his "health" was being affected by the shaving requirement and, as a result he fails to state any viable Eight Amendment claim based on the shaving requirement.  Additionally, Plaintiff fails to allege any compensable injury resulting from the standing counts that he was subjected to because he states only that he did not get to sleep as much as he wished and that, as a result, he suffered  "fatigue" of some undefined nature for some unknown time.  Again, the vague and conclusory allegations fail to state a viable Eight Amendment claim.  Furthermore, Plaintiff's own allegations show that it was his own action or inaction in refusing to follow prison rules that resulted in his failure to get food for two days, his inability to visit the library when he wanted to, and in the removal of his mattress from his cell for twenty-four (24) hours.  As a result, he cannot claim that anyone other than himself caused him to miss a few meals, to have to try to sleep without a mattress, or to miss his library visits.  Certainly, he can not show that the named Defendants proximately caused whatever injuries he might or might not have suffered from lack of food, lack of library time, or lack of sleep due to the missing mattress.

Finally, Plaintiff's allegations about the slow response to his medical care requests,

8

about the requirements that he donate his clothes to charity and pay for DNA testing, and

that the SCDC grievance system does not work well as also fail to state any compensable

claims under § 1983. To maintain a claim for denial of medical care, a prisoner must show

deliberate indifference to a serious medical need. *See* Wilson v. Seiter; Estelle v. Gamble,

429 U.S. 97 (1977). In his Amended Complaint, Plaintiff asserts only that the response

time to his requests to see medical personnel was slower than he wished. He does not

state that his requests for medical care were completely denied or that he suffered any

type of injury from the slow response. "Although the Constitution does require that

prisoners be provided with a certain *minimum level of medical treatment*, it does not

guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817

(1st Cir. 1988)(emphasis added). *Cf.* Whitley v. Albers, 475 U.S. 312, 320 (1986)(a state's

responsibility to attend to the medical needs of prisoners does not ordinarily clash with

other equally important governmental responsibilities). Although the provision of medical

care by prison or jail officials is not discretionary, the type and amount of medical treatment

is discretionary. *See* Brown v. Thompson, 868 F. Supp. 326 (S.D. Ga.. 1994)(collecting

cases). Clearly, Plaintiff's allegations do not adequately state a claim of medical

indifference.

As to the inmate grievance system, no constitutional violation is shown by Plaintiff's

allegations about a "backlog" in the system. It is well settled that prison inmates have no

federal constitutional right to have *any* inmate grievance system in operation at the place

where they are incarcerated. *See, e.g.,* Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994);

Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th

Cir.1988); Brown v. Dodson, 863 F.Supp. 284, 285 (W.D. Va. 1994). Furthermore, simply
because a state or local authority chooses to establish an inmate grievance system, that
choice does not confer any substantive constitutional right on the prison inmates or pre-trial
detainees. See Mann. As a result, even if corrections officials  fail to properly apply an
inmate grievance procedure, as Plaintiff contends is the case at Kirkland R & E, such
failure is not actionable under § 1983. See Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.
Mo.1986); Azeez v. DeRobertis, 568 F.Supp. 8, 9-11  (N.D. Ill. 1982).

Plaintiff's claims about the alleged loss of his street clothes upon checking in to
Kirkland R & E and about the requirement that he pay for DNA testing are not properly
before this federal Court as constitutional claims because Plaintiff has an adequate state
court remedy under the South Carolina Torts Claim Act for such personal property issues.
See Hudson v. Palmer, 468 U.S. 517, 533 (1984).  The United States Court of Appeals
for the Fourth Circuit has held that a federal district court should deny § 1983 relief if state
law provides a Plaintiff with a viable remedy for the loss of personal property — even if the
deprivation was caused by an employee of the state, an employee of a state agency, or
an employee of a political subdivision of a state. See Yates v. Jamison, 782 F.2d 1182,
1183-84 (4th Cir. 1986). Yates has been partially superannuated for cases where Plaintiffs
allege deprivations of intangible interests, such as a driver's license or "liberty[.]"   See
Plumer v. Maryland, 915 F.2d 927, 929-32 & nn. 2-5 (4th Cir. 1990); see also Zinermon v.
Burch, 494 U.S. 113, (1990). Nevertheless, the holding in Yates is still binding on lower
federal courts in the Fourth Judicial Circuit in cases involving deprivations of personal
property.  Hence, the loss of the Plaintiff's street clothes and of any money taken from his

10

inmate accounts to pay for DNA testing is not a basis for a federal civil rights action.

Under South Carolina law, Plaintiff's claims relating to lost personal property are cognizable under the South Carolina Tort Claims Act, § 15-78-10 *et seq.*, South Carolina Code of Laws. Section 15-78-30 and its subparts encompass a "loss" of property proximately caused by a person employed by the State of South Carolina, a state agency, or political subdivision while acting within the scope of his or her employment. Plaintiff's claims relating to his street clothes and any money taken to pay for DNA testing are cognizable under the South Carolina Tort Claims Act because Kirkland R & E is operated by a department of the State of South Carolina. Plaintiff should be mindful of the various statutory requirements for the pursuit of a claim under the South Carolina Tort Claims Act. *See, e.g.*, S.C. Code Ann. § 15-78-80; Murphy v. Richland Memorial Hospital, 317 S.C. 560, 455 S.E.2d 688 (1995); Vines v. Self Memorial Hospital, 314 S.C. 305, 443 S.E.2d 909 (1994); Pollard v. County of Florence, 314 S.C. 397, 444 S.E.2d 534 (S.C. Ct.App. 1994). Since Plaintiff's allegations fail to state any type of viable federal claim, the case should be dismissed without the service on Defendants.

## Recommendation

Accordingly, it is recommended that the District Court dismiss the Amended Complaint in this case *without prejudice* and without issuance and service of process. *See* Denton v. Hernandez; Neitzke v. Williams; Haines v. Kerner; Brown v. Briscoe, 998 F.2d 201, 202-04 & n. * (4th Cir. 1993); Boyce v. Alizaduh; Todd v. Baskerville, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are

11

subject to summary dismissal).  Plaintiff's attention is directed to the important notice on the next page.

Respectfully submitted,

Robert S. Carr
United States Magistrate Judge

12/5 , 2005
Charleston, South Carolina

# Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The *Serious Consequences* of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); Oliverson v. West Valley City, 875 F. Supp. 1465, 1467 (D. Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *See* Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991); *see also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard,, the court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"; which involved a *pro se* litigant); Goney v. Clark, 749 F.2d 5, 7 n. 1 (3d Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
